**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| Christine Soto; Gustavo Sánchez; on their own behalf and of minor C.S.S., <br><br> Plaintiffs, <br><br> v. <br><br> Commonwealth of Puerto Rico; Department of Education of the Commonwealth of Puerto Rico, <br><br> Defendants. | Civil No. 24-1405(GMM) |

## OPINION AND ORDER

Before the Court is the Commonwealth of Puerto Rico's ("Commonwealth") and the Department of Education of the Commonwealth of Puerto Rico's ("the DOE") (collectively, "Defendants") *Motion to Dismiss.* (Docket No. 13). For the reasons stated herein, and in accordance with Rule 12(b)(1), the Court **GRANTS IN PART** the *Motion to Dismiss* as to the declaratory judgment and equitable relief and **DENIES IN PART** as to the monetary damages.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On September 6, 2024, Christine Soto ("Mrs. Soto") and Gustavo Sánchez ("Mr. Sánchez") (collectively, "C.S.S.' parents"), on behalf of themselves and their minor daughter C.S.S. (collectively, "Plaintiffs"), filed a *Complaint* against Defendants pursuant to Title II of the Americans with Disabilities Act, 42

Civil No. 24-1405 (GMM)
Page – 2 –

U.S.C. §§ 12101 *et seq.* ("ADA"), Section 504 of the Rehabilitation

Act, 29 U.S.C. §§ 794 *et seq.* ("Rehabilitation Act"), and the

Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et*

*seq.* ("IDEA"). (Docket No. 1 at 1 ¶¶ 1-2). Plaintiffs seek

injunctive and declaratory relief, compensatory damages, nominal

damages, and attorney's fees and costs due to an alleged pattern

of disability-based discrimination against C.S.S. and,

particularly, Defendants' failure to provide C.S.S. a free

appropriate public education ("FAPE"). (Id. at 2, ¶¶ 3-4).

A.    Individualized Education Program

      Plaintiffs allege that C.S.S. is a minor who qualifies as a

person with a disability under the ADA and IDEA. (Id. at 2-4 ¶¶ 6-

7, 12). C.S.S. suffers from congenital diaphragmatic hernia,

hydrocephalus, juvenile idiopathic scoliosis, intermittent

strabismus, dysphagia, dextroposition of the heart, muscle

hypotonia, expressive and receptive language disorder,

gastrostomy, chronic lung disease, mild intellectual disability,

attention deficit hyperactivity disorder ("ADHD"), social

communication disorder, motor dyspraxia, and three distinct visual

perception problems. (Id.).

      As alleged in the *Complaint*, C.S.S. is currently enrolled in

the DOE's special education services and has an Individualized

Civil No. 24-1405 (GMM)
Page – 3 –

Education Program ("IEP")[1] (Id. at 4 ¶ 13). As part of C.S.S.' IEP

for the 2021-2022 academic year, on December 3, 2021, C.S.S.

participated in a "purchase of services" agreement with Colegio

CADEI, through which the private school would deliver education

services that adapt to C.S.S.' needs. (Id. at 4 ¶ 15).

Yet, between January and June 2022, deficiencies in the

education services provided by Colegio CADEI were identified

through five or more meetings with the DOE's Programming and

Placement Committee.[2] (Id.). Leticia López ("Mrs. López"), the

Designated Special Education Officer for C.S.S., and other the DOE

representatives attended these meetings, where it was determined

that Colegio CADEI was not fulfilling most of the provisions

required by C.S.S.' IEP. (Id. at 4 ¶ 16).

B.    First Administrative Complaint

On July 7, 2022, Plaintiffs filed an administrative complaint

before the DOE's Special Education Administrative Forum

("Administrative Forum"), regarding the location, provision, and

remuneration of the education services owed to C.S.S. (Id. at 4-5

---

[1] An IEP is a legally binding agreement between the parents of a disabled student
and the State or Territory's education agency, that details the special
education services, goals, and supports that the agency is obliged to provide
to the disabled student to guarantee that the child receives a FAPE, in
accordance with their specific needs and as mandated by the IDEA. G.D. by &
through Jeffrey D. v. Swampscott Pub. Schs., 27 F.4th 1, 5 (1st Cir. 2022).
[2] The Programming and Placement Committee consists of THE DOE personnel
responsible for making decisions about the services that a disabled minor will
receive in accordance with an IEP. All determinations and modifications
regarding the location, services, and accommodations that a disabled student
should receive in conformity with their IEP are assessed by this Committee. See
Valentín-Marrero v. Puerto Rico, 29 F.4th 45, 47 (1st Cir. 2022).

Civil No. 24-1405 (GMM)
Page – 4 –

¶¶ 17-18). Plaintiffs requested that the DOE review and address the deficiencies that were previously identified in the execution of C.S.S.' 2021-2022 IEP — namely Colegio CADEI's noncompliance with the IEP — by creating a new IEP for the 2022-2023 academic year that would relocate C.S.S. to a different school. (Id.).

Three mediation meetings were held with the DOE personnel, during which Plaintiffs proposed three different schools to which C.S.S. may be relocated: José C. Rosario School in Isabela, José de Diego School in Aguadilla, and Aurora Méndez Charneco School in San Sebastián. (Id. at 5 ¶¶ 18-19). Ultimately, the DOE enrolled C.S.S. in the Ceferina Cordero School in Aguadilla. (Id. at 6-7 ¶¶ 24-29). Plaintiffs opposed this transfer for two reasons: the school lacked teachers and assistant personnel with training to attend to C.S.S.' needs, and the school intended to place C.S.S. in the second grade despite that C.S.S. had yet to complete the first grade. (Id.).

On September 7, 2022, an administrative hearing was convened before an Administrative Judge. (Docket No. 21-1 at 1-6). In this hearing, the Administrative Judge ordered the DOE to compensate Plaintiffs for the loss of therapy services and mandated the Programming and Placement Committee to review C.S.S.' IEP for the upcoming academic year. (Id.). The first administrative complaint, however, was not closed, as Plaintiffs submitted multiple motions to the Administrative Forum alleging the DOE's continued and

Civil No. 24-1405 (GMM)
Page – 5 –

persistent lack of compliance with C.S.S.' IEP. (Id.). A second
administrative hearing was supposed to be held subsequently, yet
it was postponed on six occasions. (Id.). The first administrative
complaint was reassigned to a total of four different
Administrative Judges; seven status conferences were held; and
Plaintiffs met four times with the Programming and Placement
Committee to discuss modifications to C.S.S' IEP. (Id.)

On May 22, 2023, the presiding Administrative Judge granted
Plaintiffs' first administrative complaint, upon a finding that
Plaintiffs and the DOE reached an agreement regarding the
appointment of a service assistant to C.S.S. and the procedures
for placing C.S.S. in an appropriate education setting. (Id. at 7-
8). The Administrative Forum thereby ordered the DOE to engage in
the "strict compliance of the agreements reached between the
parties." (Id.)

C.    Second Administrative Complaint

On September 2, 2024, C.S.S. filed a second administrative
complaint at the Administrative Forum. (Docket No. 21-2). Therein,
Plaintiffs requested that the DOE: assign a service assistant to
C.S.S.; provide compensation for the education services that
C.S.S. lost by virtue of not having a service assistant; and for
the DOE to produce a digital copy of C.S.S.' academic file. (Id.
at 2).

Civil No. 24-1405 (GMM)
Page – 6 –

A conciliation meeting was held on September 9, 2024, during which the DOE agreed to deliver a digital copy of C.S.S.' academic file. (Id. at 2-3). In addition, an administrative meeting was convened on October 10, 2024, where the parties informed that the DOE "had complied with appointing [C.S.S.] a service assistant, it was also notified that having addressed this matter, all that remained was to address the request for compensation of services." (Id. at 2-3). Therefore, the only issue pending before the Administrative Judge was the matter of compensation, to which the parties reached an agreement. (Id.). On October 28, 2024, the Administrative Judge entered a *Resolution and Order* which required the DOE to "provide education services for the extended school year 2024-2025" in compliance with the agreed terms. (Id. at 3).

D.    Complaint at District Court

On September 6, 2024, Plaintiffs filed their *Complaint* with this Court, alleging that the DOE has been responsible for "systematic delays," "a systematic pattern of negligence and discrimination," "unjustified delays and lack of effective communication in the implementation of agreed recommendations," and a "failure to comply with the agreed conditions" — which allegedly has deprived C.S.S. from a FAPE. (Docket No. 1 at 19 ¶ 82, 86, 94, 95). Plaintiffs also claim that the DOE failed to provide C.S.S. with the necessary accommodations to ensure personalized and comprehensive education services that are

Civil No. 24-1405 (GMM)
Page – 7 –

appropriate to C.S.S.' needs. (Id. at 18-19 ¶¶ 80-81). Furthermore, Plaintiffs claim that the DOE personnel have failed to ensure that the terms of parties' agreement are fulfilled, coordinate visits to the proposed schools, and facilitate the enrollment and transfer of C.S.S. to an adequate school (Id. at 19 ¶ 85).

In their *Complaint*, Plaintiffs seek a variety of relief to redress the alleged violations. First, a declaratory judgment stating that Defendants C.S.S.' rights were violated, under the IDEA, the ADA, and the Rehabilitation Act. Second, injunctive relief ordering the DOE to provide adequate education services to C.S.S. in accordance with her needs, directing the Programming and Placement Committee to create a new IEP for C.S.S. for the 2024-2025 academic year, and requiring Defendants to undertake remedial measures to mitigate the effects of past and ongoing violations of C.S.S.' rights. Third, compensatory damages for emotional harms, nominal damages for violations to C.S.S.' rights, and attorney's fees. (Id. at 27-29).

E.   Motion to Dismiss

On December 6, 2024, Defendants filed their *Motion to Dismiss*, (Docket No. 13). First, Defendants claim the Court lacks subject-matter jurisdiction, pursuant to Rule 12(b)(1), given Plaintiffs' failure to comply with the IDEA's requirement of exhausting administrative remedies. Second, Defendants argue that Plaintiffs failed to state a claim under the ADA and the Rehabilitation Act

Civil No. 24-1405 (GMM)
Page - 8 -

— in accordance with Rule 12(b)(6) — because Plaintiffs' claims are based on the denial of a FAPE and, therefore, should be evaluated under the IDEA. Lastly, Defendants aver that Plaintiffs are not entitled to compensatory and nominal damages, as these monetary remedies are broader than those afforded by the IDEA. (Id. at 2-3, 7-11, 16).

On December 20, 2024, Plaintiffs filed *Plaintiffs' Opposition to Defendant's Motion to Dismiss* ("*Response*") (Docket No. 16). In their *Response*, Plaintiffs argue that C.S.S. was at risk of suffering an "imminent and irreparable" harm which justified the non-exhaustion of administrative remedies. (Id. at 10). Likewise, Plaintiffs argue they need not exhaust administrative remedies under the 'futility' exception to this doctrine, given the "systemic discrimination and deliberate indifference that extends far beyond mere denial of a [FAPE]." (Id. at 1, 10-16).

Plaintiffs further argue in their *Response* that their ADA and Rehabilitation Act claims are distinct and separate from the IDEA claims, given that the former are based on disability-based discrimination and the latter on noncompliance with education access for C.S.S. (Id. at 6-10). Lastly, Plaintiffs assert that nominal and compensatory damages are, indeed, available under the ADA and Rehabilitation Act without the need to exhaust administrative remedies. (Id. at 20).

Civil No. 24-1405 (GMM)
Page – 9 –

In return, Defendants replied to Plaintiffs' *Response* by filing a *Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss*, on January 21, 2025. (Docket No. 25). Therein, Defendants reiterate the arguments that they initially espoused through their *Motion to Dismiss*. (Id.)

F.    Motion to Show Cause

On September 11, 2025, this Court issued an *Order to Show Cause*, thereby ordering all parties to brief: whether Plaintiffs properly exhausted the DOE's administrative remedies and, if not, whether the futility doctrine applies; whether it is required to exhaust administrative remedies in relation to the ADA and the Rehabilitation Act claims for compensatory damages; and, lastly, whether there has been any factual development that would moot — or otherwise impact — the claims presented in this civil action. (Docket No. 30).

Defendants submitted a *Motion in Compliance of Show Cause Order* on September 22, 2025. (Docket No. 33).[3] Defendants argue that IDEA's requirement of exhaustion of administrative remedies applies because Plaintiffs' action is grounded upon the denial of a FAPE. (Id. at 2-6). By the same token, Defendants assert that no exception to the exhaustion of administrative remedies is applicable, and that Plaintiffs must exhaust such remedies to

_____

[3] Although the Defendants' filing was untimely as per the *Order* issued at Docket No. 30, the Court will consider the arguments for the benefit of a full record.

Civil No. 24-1405 (GMM)
Page – 10 –

receive the monetary compensation they seek. (Id. at 6-9).
Consequently, Defendants petition the Court to "dismiss the
instant case for lack of subject matter jurisdiction due to
Plaintiffs' failure to exhaust IDEA administrative remedies." (Id.
at 10). Defendants, however, do not address whether any recent
factual development moots this civil action.

On September 23, 2025, Plaintiffs submitted *Plaintiffs'*
*Response to Order to Show Cause*. (Docket No. 34).[4] In responding
to whether Plaintiffs properly exhausted administrative remedies,
Plaintiffs espouse that the first administrative complaint filed
at the Administrative Forum "explicitly sought comprehensive

---

[4] The Court reprimands Plaintiffs' attorney for his lack of diligence in complying with the Court's orders.

In the *Order to Show Cause*, the Court instructed that the "[p]arties shall provide copies of those administrative complaints and their certified English translations" by September 19, 2025. (Docket. No 30 at 4). Despite assuring in *Plaintiffs' Response to Order to Show Cause* that copies of the administrative complaints were going to be filed as Exhibits, along with their certified English translations, Plaintiffs' attorney failed to submit them. (Docket No. 34 at 2 no.1). The Court prompted Plaintiffs' attorney to file the requested documents through an *Order*, (Docket No. 30), to which Plaintiffs' attorney asked for an extension of time that was granted. (Docket No. 31, 32). After submitting a copy of the administrative complaints in Spanish (Docket No. 36), the Court granted Plaintiffs' attorney an extension of time to file certified English translations. (Docket No. 37). Plaintiffs' attorney, rather than filing the certified English translations, has requested the Court to reconsider whether Plaintiffs should submit the translations, because Plaintiffs need not bear the costs of the translation services. (Docket No. 38).

The First Circuit has been unequivocally clear: District Courts may not consider filings that are not written in the English language. *See* Gonzalez-De-Blasini v. Family Dep't., 377 F.3d 81, 89 (1st Cir. 2004). In light of Plaintiffs attorney's failure to submit certified English translations of the two administrative complaints — despite being ordered to do so through the *Order to Show Cause*; despite having been granted two extensions of time to do so; and despite assuring in *Plaintiffs' Response to the Order to Show Cause* that he will file these documents — the Court proceeds without considering the Spanish copies of Plaintiffs' administrative complaints.

Civil No. 24-1405 (GMM)
Page – 11 –

education relief, including appropriate IEP development and implementation." (Id. at 2). In addition, Plaintiffs argue that they are exempted from exhausting administrative remedies, given that there is a series of system-wide deficiencies within the DOE that would render futile the process of exhaustion. (Id. at 3-6). As for compensatory damages, Plaintiffs contend that these do not require exhaustion and that the Court retains subject-matter jurisdiction over them. (Id. at 6-8).

As to whether there have been recent developments that would moot the claims, Plaintiffs respond that, since the *Complaint* was filed, the DOE has been in continued violation of the agreement reached between the parties through the Administrative Forum. (Id. at 8-10). There is no indication, however, that a third administrative complaint has been filed to address the inadequacy of C.S.S.' IEP or to challenge the DOE's compliance with C.S.S.' agreed IEP.

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by [the] Constitution and [federal] statute[,] which is not to be expanded by judicial decree." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (internal citations omitted); *see* Willy v. Coastal Corp., 503 U.S. 131, 136-37 (1992); Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986); Am. Fire & Cas. Co. v. Finn,

Civil No. 24-1405 (GMM)
Page – 12 –

341 U.S. 6, 95 (1951). "It is to be presumed that a cause [of action] lies outside this limited jurisdiction[,] and the burden of establishing the contrary rests upon the party asserting jurisdiction" Kokkonen, 511 U.S. at 377 (internal citations omitted). "Federal courts . . . therefore must be certain that they have explicit authority to decide a case"; otherwise, dismissal is warranted. Bonas v. Town of North Smithfield, 265 F.3d 69, 73 (1st Cir. 2011).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12 tests the legal sufficiency of Plaintiff's *Complaint*, rather than the merits of the claim. *See* Twum-Baah v. Dep't of Agric., 299 F. Supp. 3d 369, 372 (D.P.R. 2018).

"When faced with motions to dismiss under both 12(b)(1) and 12(b)(6), a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(1) motion first." Ne. Erectors Ass'n v. Sec'y of Lab., 62 F.3d 37, 39 (1st Cir. 1995); *see* Bell v. Hood, 327 U.S. 678, 682 (1945) ("Whether the complaint states a cause of action on which relief could be granted is a question of law and[,] just as issues of fact[,] it must be decided after[,] and not before[,] the [C]ourt has assumed jurisdiction over the controversy."). "[A]s a general matter, trial courts should give Rule 12(b)(1) precedence." Dynamic Image Techs., Inc. v. United States, 221 F.3d 34, 37 (1st Cir. 2000). "It is not simply formalistic to decide the jurisdictional issue when the case would

Civil No. 24-1405 (GMM)
Page - 13 -

be dismissed in any event for failure to state a claim. Different consequences flow from dismissals under 12(b)(1) and 12(b)(6); for example, dismissal under the former, not being on the merits, is without res judicata effect." Ne. Erectors Ass'n., 62 F.3d at 39.

A.    Fed. R. Civ. P. 12(b)(1)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) constitutes a challenge to the Court's subject-matter jurisdiction over a claim. Valentin v. Hosp. Bella Vista, 254 F.3d 358, 362-63 (1st Cir. 2001). Subject-matter jurisdiction is "the [C]ourts' statutory or constitutional power to adjudicate the case." Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 89 (1998); Wachovia Bank, N. A. v. Schmidt, 546 U.S. 303, 316 (2006) ("Subject-matter jurisdiction . . . concerns a court's competence to adjudicate a particular category of cases[.]").

"[A] federal court may not hypothesize subject-matter jurisdiction for the purpose of deciding the merits." Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 577 (1999). "The requirement that jurisdiction be established as a threshold matter . . . is inflexible and without exception[,] for [j]urisdiction is power to declare the law, and [w]ithout jurisdiction the court cannot proceed at all in any cause[.]" Id. at 577 (citing Steel Co., 523 U.S. at 94-95) (internal citations omitted).

The First Circuit has described Federal Rule of Civil Procedure 12(b)(1) as a "large umbrella, overspreading a variety

Civil No. 24-1405 (GMM)
Page – 14 –

of different types of challenges to subject matter jurisdiction"
— including standing, ripeness, mootness, the existence of a
federal question, diversity of citizenship, and sovereign
immunity. Valentin, 254 F.3d at 362-63. The party invoking the
Court's subject matter jurisdiction bears the burden of proving
that such a jurisdiction exists. McCulloch v. Velez, 364 F.3d 1,
5 (1st Cir. 2004); Skwira v. United States, 344 F.3d 64, 71 (1st
Cir. 2003); Murphy v. United States, 45 F.3d 520, 522 (1st Cir.
1995).

The "pertinent inquiry is whether the challenged pleadings
set forth allegations sufficient to demonstrate that the subject
matter jurisdiction of the [C]ourt is proper." Marrero v. Costco
Wholesale Corp., 52 F. Supp. 3d 437, 439 (D.P.R. 2014). In
reviewing such a motion, the Court must construe the *Complaint*
liberally and treat all well-pleaded facts as true, "according the
plaintiff the benefit of all reasonable inferences." Murphy, 45
F.3d at 522.

In this inquiry, "the [C]ourt may consider documents outside
the pleadings, such as exhibits and affidavits attached to the
motion to dismiss, and the opposition." Mercado Arocho v. United
States, 455 F. Supp. 2d 15, 17 (D.P.R. 2006); *see also* Land v.
Dollar, 330 U.S. 731, 735 n.4 (1947) ("[W]hen a question of the
District Court's jurisdiction is raised, either by a party or by
the court on its own motion, Judicial Code § 37, 28 U.S.C. § 80,

Civil No. 24-1405 (GMM)
Page – 15 –

Fed. R. Civ. P. 12 (b), the court may inquire, by affidavits or otherwise, into the facts as they exist.").

Dismissal would be proper only if the facts alleged reveal a jurisdictional defect not otherwise remediable. <u>Sumitomo Real Est. Sales (N.Y.), Inc. v. Quantum Dev. Corp.</u>, 434 F. Supp. 2d 93, 95 (D.P.R. 2006). "If the Court determines that subject matter jurisdiction does not exist[,] it must dismiss the case and not make any determination on the merits of the case." <u>Fernandez Molinary v. Industrias la Famosa, Inc.</u>, 203 F. Supp. 2d 111, 114 (D.P.R. 2002); *see* <u>Menendez v. United States</u>, 67 F. Supp. 2d 42, 45 (D.P.R. 1999).

B.    <u>Fed. R. Civ. P. 12(b)(6)</u>

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move for the dismissal of a complaint when the pleading fails to state a claim upon which relief can be granted. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555-56 (2007) (internal quotation marks and citations omitted). Factual allegations must be enough to raise a right to relief above the speculative level. <u>Id.</u>

Civil No. 24-1405 (GMM)
Page – 16 –

To survive a Rule 12(b)(6) motion, a plaintiff must allege on the face of their complaint "sufficient facts to support a plausible claim for relief." Doe v. Stonehill Coll., Inc., 55 F.4th 302, 316 (1st Cir. 2022). In this context, plausible "means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels us to draw on our judicial experience and common sense." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (internal quotation marks omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citations and quotation marks omitted); see Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).

When evaluating such a motion, the Court "accept[s] as true all well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiffs." Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009); see Fitzgerald v. Harris, 549 F.3d 46, 52 (1st Cir. 2008)); see also Miss. Pub. Emps.' Ret. Sys. v. Bos. Sci. Corp., 523 F.3d 75, 85 (1st Cir. 2008). "No matter how skeptical the [C]ourt may be" it "must take

Civil No. 24-1405 (GMM)
Page – 17 –

the allegations as true." <u>Iqbal</u>, 556 U.S. at 696; <u>Twombly</u>, 550 U.S. at 555. Nonetheless, federal courts "are not bound to accept as true a legal conclusion couched as a factual allegation." <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986); *see* <u>Land</u>, 330 U.S. at 735 n.4 ("In passing on a motion to dismiss because the complaint fails to state a cause of action, the facts set forth in the complaint are assumed to be true and affidavits and other evidence produced on application for a preliminary injunction may not be considered.").

The Court does not "credit conclusory legal allegations [or] factual allegations that are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture." <u>Douglas v. Hirshon</u>, 63 F.4th 49, 55 (1st Cir. 2023). Accordingly, the Court will "ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." <u>Schatz</u>, 669 F.3d at 55.

C.    <u>20 U.S.C. §§ 1400 *et seq.* (IDEA)</u>

District courts must apply an intermediate standard of review when considering challenges to the decisions of administrative agencies in relation to the IDEA. <u>Johnson v. Boston Pub. Schs.</u>, 906 F.3d 182, 190 (1st Cir. 2018). To wit:

> [A] district court reviews the administrative record, which may be supplemented by additional evidence from the parties, and makes an independent ruling based on the preponderance of the evidence. However, that independence is tempered by the requirement that the

Civil No. 24-1405 (GMM)
Page – 18 –

> court give due weight to the hearing officer's findings.
> As a result, a district court's review falls somewhere
> between the highly deferential clear-error standard and
> the non-deferential *de novo* standard.

Johnson, 906 F.3d at 191 (*citing* D.B. *ex rel.* Elizabeth B. v.
Esposito, 675 F.3d 26, 36 (1st Cir. 2012)).

### III. APPLICABLE LAW AND DISCUSSION

In their *Motion to Dismiss*, Defendants argue that the Court
lacks subject-matter jurisdiction, pursuant to Rule 12(b)(1),
given that Plaintiffs failed to comply with IDEA's requirement of
exhausting administrative remedies.

A.   Right to Free Appropriate Public Education

"Congress designed the IDEA as part of an effort to help
states provide education services to disabled children." C.G. *ex
rel.* A.S. v. Five Town Cmty. Sch. Dist., 513 F.3d 279, 284 (1st
Cir. 2008); *see* Schaffer *ex rel.* Schaffer v. Weast, 546 U.S. 49,
52 (2005). This statutory scheme has the ultimate goal "to ensure
that all children with disabilities have available to them a free
appropriate public education . . . designed to meet their unique
needs and prepare them for further education, employment, and
independent living." 20 U.S.C. § 1400(d)(1)(A). Accordingly, the
IDEA aims to prepare children with disabilities for independent
living and a reasonable measure of self-sufficiency where
possible. *See* 20 U.S.C. § 1400(c)(1), (d)(1)(A); Bd. of Educ. of

Civil No. 24-1405 (GMM)
Page – 19 –

Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 201 n.23
(1982).

FAPE entails the provision of special education and related
services that are in conformity with the minor's IEP. *See* 20 U.S.C.
§ 1401(9); *see also* C.G., 513 F.3d at 284 ("A FAPE encompasses
special education and support services provided free of charge")
(*citing* 20 U.S.C. § 1401(9)) (internal quotations omitted). To
that end, any State or Territory receiving federal funding under
the IDEA must offer a FAPE to every disabled child within its
jurisdiction. *See* 20 U.S.C. § 1412(a)(1)(A); Esposito, 675 F.3d at
34. "If a school system is unable to furnish a disabled child with
a FAPE through a public-school placement, it may be obliged to
subsidize the child in a private program." Id.

The Supreme Court has provided guidance for analyzing the
denial of a FAPE, explaining that "a court should look to the . .
. gravamen[] of the plaintiff's complaint" and not "the labels
used in [it]." Fry v. Napoleon Cmty. Schs., 580 U.S. 154, 169
(2017). The Court asks two questions to identify this gravamen:
"First, could the plaintiff have brought essentially the same claim
if the alleged conduct had occurred at a public facility that was
*not* a school – say, a public theater or library? And second, could
an *adult* at the school — say, an employee or visitor — have pressed
essentially the same grievance?" Id. at 171. Moreover, "a
plaintiff's initial pursuit of the IDEA's administrative remedies

Civil No. 24-1405 (GMM)
Page – 20 –

can serve as evidence that the gravamen of her later suit is the denial of a FAPE[.]" Fry, 580 U.S. at 175.

In the case at hand, the substance and gravamen of Plaintiffs' *Complaint* concerns the denial of a FAPE for C.S.S: in applying Fry's two-part inquiry, it becomes clear that Plaintiffs' claims are based on the denial of FAPE, rather than on a pattern of disability-based discrimination that is separate and independent to the education setting.

As to the first question presented in Fry, Plaintiffs argue that the DOE "has directly discriminated against C.S.S. by failing to provide the necessary education services, including the absence of an adequate IEP and continuous administrative negligence, resulting in the minor's exclusion from an appropriate education environment." (Docket No. 16 at 7). Certainly, the failure to provide an IEP, resulting in an inadequate education environment, could only occur within a school setting.

As to Fry's second question, Plaintiffs claim the DOE's "continued negligence, noncompliance with mediation agreements, and refusal to provide an appropriate school placement with a valid IEP. . . has had devastating effects on the well-being of C.S.S." (Id. at 8). These grievances could not be pressed by an adult at a school, since they involve the denial of an adequate education service that is specifically mandated as to minor students with disabilities.

Civil No. 24-1405 (GMM)
Page – 21 –

For these reasons, the Court finds that Plaintiffs' claims are, fundamentally, about the denial of a FAPE.

B.    <u>Exhaustion of Administrative Remedies</u>

In the special education context, the primary vehicle for delivery of a FAPE is an IEP, which must be drafted in compliance with 20 U.S.C. § 1414(d). <u>Endrew F.</u> *ex rel.* <u>Joseph F. v. Douglas Cnty. Sch. Dist. RE-1</u>, 580 U.S. 386, 391 (2017); <u>Valentín-Marrero</u>, 29 F.4th at 50. An IEP must be "individually designed" to suit a particular child." <u>Rowley</u>, 458 U.S. at 201. In addition, it must include, "at a bare minimum, the child's present level of education attainment, the short- and long-term goals for his or her education, objective criteria with which to measure progress toward those goals, and the specific services to be offered," <u>Lessard v. Wilton-Lyndeborough Coop. Sch. Dist.</u> 518 F.3d 18, 23 (1st Cir. 2008).

"To comply with the IDEA, an IEP must be reasonably calculated to confer a meaningful education benefit." <u>Esposito</u>, 675 F.3d at 57. To ensure the continued adequacy of a child's IEP, the IDEA requires that it be reevaluated annually through a collaborative process that involves the child's parents and educators. *See* 20 U.S.C. § 1414(d); <u>Lessard</u>, 518 F.3d at 23; <u>Me. Sch. Admin. Dist. No. 35 v. Mr. R.</u>, 321 F.3d 9, 12 (1st Cir. 2003). If this process breaks down and no consensus emerges, the child's parents may challenge either: (a) the school system's handling of the disabled

Civil No. 24-1405 (GMM)
Page — 22 —

student's IEP; or (b) the substantive adequacy of the IEP itself
(*i.e.*, that the IEP was incomplete or inadequate), by demanding an
administrative process before the State or Territory's education
administrative agency — a process known as the exhaustion of
administrative remedies. *See* 20 U.S.C. § 1415(f)(1)(A); <u>Lenn v.
Portland Sch. Comm.</u>, 998 F.2d 1083, 1086 (1st Cir. 1993).

    Accordingly, parties who wish to sue for the denial of a FAPE
must first exhaust administrative remedies. <u>Roe v. Healey</u>, 78 F.4th
11, 24 (1st Cir. 2023); <u>Rose v. Yeaw</u>, 214 F.3d 206, 210 (1st Cir.
2000). This exhaustion requirement applies whenever a plaintiff
pursues a civil action that alleges the denial of a FAPE, without
regard as to whether the plaintiff is citing IDEA or any other
statute. *See* 20 U.S.C. § 1415(l); <u>Fry</u>, 580 U.S. at 165-68. To be
sure, exhaustion applies no matter whether the claim is brought
under IDEA or under any other statutory framework. <u>Id.</u> After
exhausting administrative remedies, "[e]ither side may then appeal
from the hearing officer's final decision to either a federal or
state court of competent jurisdiction." <u>Lessard</u>, 518 F.3d at 24;
*see* 20 U.S.C. § 1415(i)(2)(A).

    This administrative process of exhaustion begins with a
mediation with the child's IEP team and, if the dispute remains
unresolved, progresses to a "due process hearing" before an
impartial hearing officer. 20 U.S.C. § 1415(b)-(f); <u>Doucette v.
Georgetown Pub. Sch.</u>, 936 F.3d at 22 (1st Cir. 2019). Such an

Civil No. 24-1405 (GMM)
Page – 23 –

officer may grant relief based upon "a determination of whether the child received a [FAPE]." 20 U.S.C. § 1415(f)(3)(E)(i). The burden of persuasion in the administrative hearing lies with the challenging party. Schaffer v. Weast, 546 U.S. 48, 62 (2005).

In the case at hand, Plaintiffs have invoked the jurisdiction of this Court seeking an equitable relief that they have not previously requested through administrative procedures: in plain and simple terms, Plaintiffs seek the prospective enforcement of C.S.S.' IEP. (Docket No. 34 at 8-10).

The procedural track of this case is particularly relevant. Almost two months after Plaintiffs initiated this civil action by filing their *Complaint*, Plaintiffs reached an agreement with Defendants to settle their second administrative complaint. (Docket No. 21-2). Through this agreement, Plaintiffs and Defendants settled Plaintiffs' grievances by granting Plaintiffs everything that was requested on the second administrative complaint: a service assistant for C.S.S., compensation for the loss of education services due to the lack of a service assistant, and a digital copy of C.S.S.' academic file. (Id. at 3).[5] By consequence, after this civil action was initiated, the parties

---

[5] The same occurred when Plaintiffs and Defendants settled Plaintiffs' first administrative complaint, which consisted in an agreement as to the education services that C.S.S. would receive, and a schedule of meetings between Plaintiffs and the Programming and Placement Committee to address modifications to C.S.S.' IEP. (Docket No. 21-1 at 7). In addition, during this first administrative procedure, the Administrative Judge ordered the DOE to engage in the "strict compliance of the agreements reached between the parties." (Id.)

Civil No. 24-1405 (GMM)
Page — 24 —

reached an agreement as to: (a) the adequacy and enforcement of
C.S.S.' IEP; and (b) the compensatory damages that Plaintiffs would
receive in relation to Defendants' inadequate handling of C.S.S.'
education services. (Docket No. 21-2).

In the eyes of this Court, the core concerns raised in this
civil action - which brought Plaintiffs to invoke the jurisdiction
of this Court - have already been addressed through administrative
procedures, thereby raising the issue of mootness. *See* Knox v.
Serv. Emps., 567 U.S. 298, 307 (2012) (A case "becomes moot only
when it is impossible for a court to grant any effectual relief
whatever to the prevailing party").

In light of this concern, the Court issued an *Order to Show
Cause*, through which the parties were given the opportunity to
answer whether "there have been any additional developments after
the filing of the *Complaint* that either moot or impact the claims
presented in this case." (Docket No. 30 at 6). Through their
responses to the *Order to Show Cause*, rather than addressing the
elephant in the room — that Plaintiffs already settled through the
Administrative Forum the core concerns of this current lawsuit —
the parties failed to set forth additional facts that would merit
this Court's intervention. Moreover, in *Plaintiffs' Response to
the Order to Show Cause* Plaintiffs — for the first time — raised
that "urgent judicial intervention" is required because Defendants
have engaged in "systemic non-compliance" and "ongoing violations"

Civil No. 24-1405 (GMM)
Page – 25 –

with the terms of the agreement reached between the parties as to the second administrative complaint. (Docket No. 34 at 8-9).

Without previously presenting this claim in its *Complaint*[6] nor in the Administrative Forum, Plaintiffs now urge this Court to prospectively enforce the agreement that was reached between the parties **after** the *Complaint* was filed — hence making this request for the first time about one year after this case was initiated, and only after being prompted by this Court as to why this lawsuit should not be dismissed.[7]

Under the current and applicable jurisprudence, this Court retains subject-matter jurisdiction over the prospective enforcement of a disabled student's IEP only when two factors are present. First, the plaintiff must have previously presented their claim at the State's or Territory's education agency. Pihl v. Mass. Dep't. of Educ., 9 F.3d 184, 190 (1st Cir. 1993) (establishing that the role of the District Court in an IDEA case is to review

---

[6] Nor did Plaintiffs request leave to file an amended complaint that would include this prayer for relief.

[7] In their *Complaint*, Plaintiffs ask for "[a] preliminary order instructing Department of Education to provide C.S.S. with all education services required and that are consistent with her special needs" (Docket No. 1 at 28 ¶ C). This prayer for relief, however, was made prior to the parties' agreed settlement of their second administrative complaint and thereby became moot once Defendants formally committed themselves (through the Administrative Forum) to provide the appropriate education services that were requested by Plaintiffs.

Now, through *Plaintiffs' Response to the Order to Show Cause*, Plaintiffs ask this Court to engage in "urgent judicial intervention" to mandate Defendants to comply with the agreed terms of the second administrative complaint. (Docket No. 34 at 8). This sought relief entails prospective injunctive relief and, accordingly, is subject to IDEA's requirement of exhaustion of remedies.

Civil No. 24-1405 (GMM)
Page – 26 –

the decision of the hearing officer, and for this reason "issues first must be presented to the administrative hearing officer to be preserved for judicial review"). Through its administrative claim, the plaintiff must challenge the disabled student's IEP either: (a) on its face, for being incomplete or inadequate; or (b) as applied, given that the State's or Territory's education agency failed to properly implement or comply with the agreed IEP. *See* Ross v. Framingham Sch. Comm., 44 F. Supp. 2d 104, 116 (D. Mass. 1999), *aff'd*, 229 F.3d 1133 (1st Cir. 2000) ("This court has jurisdiction over a claim of 'noncompliance' or 'nonimplementation' that was originally brought before the Hearing Officer").

Second, the Administrative Forum must issue a final decision with which Plaintiffs are not in agreement. Sch. Comm. of Burlington v. Dep't of Educ. of Mass., 471 U.S. 359, 361 (1985) (establishing that the IDEA guarantees to parents the right to participate in the development of an IEP for their handicapped child, and to challenge the appropriateness of their child's IEP in an administrative hearing with subsequent judicial review); *see also* 20 U.S.C. § 1415.

In the case at hand, however, the opposite is true. After reaching an agreement with Defendants as to C.S.S.' education needs and how to implement them, Plaintiffs resort to this Court to ask for the prospective enforcement of C.S.S.' IEP, without previously

Civil No. 24-1405 (GMM)
Page - 27 -

raising this claim in the Administrative Forum (nor in the
*Complaint*). Such a claim requires Plaintiffs to exhaust
administrative remedies prior to resorting to a federal court, in
accordance with the IDEA, by presenting the claim on the face of
an administrative complaint at the Administrative Forum. *See,
e.g.*, C.G., 513 F.3d at 286; Lessard, 518 F.3d at 29.

If Plaintiffs understand that, since the filing of their
*Complaint*, Defendants have deprived C.S.S. from a FAPE by not
complying with the parties' agreement, then the appropriate course
of action would be to file an administrative complaint in which
this claim is properly included and adjudicated in accordance with
the IDEA's requisite exhaustion of remedies. Pihl, 9 F.3d at 190
(holding that, as a general matter, an IEP is ripe for judicial
review when the state education agency has issued a final decision
reviewing that proposed education plan). Once the process of
administrative adjudication is finalized, if Plaintiffs are not in
agreement with the decision made at the Administrative Forum, then
Plaintiffs may have an appropriately ripe claim to invoke this
Court's subject-matter jurisdiction. Id.; *see* 20 U.S.C. §
1415(i)(2)(A) (providing that "[a]ny party that is unsatisfied
with the state review officer's decision has further recourse in
either federal or state court"); *see also* Maroni v. Pemi-Baker
Reg'l Sch. Dist., 346 F.3d 247, 250 (1st Cir. 2003) (*adopting*
Kirkpatrick v. Lenoir Cnty. Bd. of Educ., 216 F.3d 380, 383 (4th

Civil No. 24-1405 (GMM)
Page – 28 –

Cir. 2000) (establishing judicial review under the IDEA is available when parents are "dissatisfied" with the administrative official's decision regarding their FAPE claims)). Otherwise, if Plaintiffs are in agreement with the final decision of the Administrative Forum, there would be no 'live' case or controversy that would warrant invoking the jurisdiction of this Court.

Accordingly, in the absence of the requisite exhaustion of remedies, the civil action before this Court is not the appropriate action to challenge Defendants' alleged noncompliance with the terms of the parties' agreement.

C.    Futility

Although the administrative exhaustion of the IDEA claims is the general rule, it "is not absolute." Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 59 (1st Cir. 2002). Fundamentally, "[a] plaintiff does not have to exhaust administrative remedies if she can show . . . that the administrative remedies afforded by the process are inadequate given the relief sought." Rose, 214 F.3d at 210-11; Honig v. Doe, 484 U.S. 305, 327 (1988) (holding, under predecessor statute, that "parents may bypass the administrative process where exhaustion would be futile or inadequate"); see also 121 Cong. Rec. 37,416 (1975) (remarks of Sen. Williams) ("[E]xhaustion of the administrative procedures . . . should not be required for any individual complainant filing a judicial action

Civil No. 24-1405 (GMM)
Page — 29 —

in cases where such exhaustion would be futile either as a legal
or practical matter").

"[R]ules requiring administrative exhaustion are not meant to
be enforced in a manner that would require empty formalities."
Doucette, 936 F.3d at 22 (*citing* Panetti v. Quarterman, 551 U.S.
930, 946 (2007)) (internal quotation marks omitted). "Plaintiffs
are not required to exhaust administrative remedies under the IDEA
when exhaustion would be futile." Id. Nevertheless, IDEA's
exhaustion requirement remains the general rule, and "a party who
seeks to invoke an exemption bears the burden of showing that it
applies." Frazier, 276 F.3d at 59; Honig, 484 U.S. at 326-27.

When a plaintiff asserts a judicial claim for the denial of
a FAPE, the Supreme Court and the First Circuit have adopted a
rigorous doctrine to determine whether the exhaustion of
administrative remedies, as required by IDEA, would be futile or
inadequate.

On the one hand, the exhaustion of administrative remedies is
not required when the claim being asserted - pursuant to IDEA or
any other statute - is not based on the denial of a FAPE. Doucette,
936 F.3d at 23-24. The Supreme Court, in addressing the reach of
IDEA's exhaustion provision, found that it only applies to lawsuits
seeking "relief for the denial of a FAPE." Fry, 580 U.S. at 165.
If a school "refus[es] to make an accommodation" for a disabled
child, thereby "injuring [the child] in ways unrelated to a FAPE,"

Civil No. 24-1405 (GMM)
Page – 30 –

then a plaintiff "seeking redress for those other harms . . . is not subject to § 1415(l)'s exhaustion rule." Id. at 168-70; *see* Doucette, 936 F.3d at 23-24.

On the other hand, when the plaintiff's claims are, indeed, founded upon the denial of a FAPE, then the plaintiff is exempted from exhausting administrative remedies only when two elements are present: "Futility applies when (1) the plaintiff's injuries are not redressable through the administrative process and (2) the administrative process would provide negligible benefit to the adjudicating court." Doucette, 936 F.3d at 31 (*citing* Rose, 214 F.3d at 210-11) (internal citation omitted); *see* Christopher W. v. Portsmouth Sch. Comm., 877 F.2d 1089, 1094 (1st Cir. 1989).

In addition to delineating the recognized exceptions to IDEA's requirement of exhaustion of remedies, the First Circuit has acknowledged that other appellate courts have expanded the scope of the 'futility' exception as to encompass systemic and structural failures in the State or Territorial education system, as an avenue to bypass the exhaustion requirement. Parent/Professional Advoc. League v. City of Springfield, 934 F.3d 13, 27-28 (1st Cir. 2019) ("Other circuits have defined an exception to the IDEA's exhaustion rule for "systemic" suits.").

"[T]o fall under that exception, the alleged violations must be 'truly systemic . . . in the sense that the IDEA's basic goals are threatened on a system-wide basis.'" Id. (*citing* Hoeft v.

Civil No. 24-1405 (GMM)
Page – 31 –

Tucson Unified Sch. Dist., 967 F.2d 1298, 1305 (9th Cir. 1992) (internal quotation marks omitted); Handberry v. Thompson, 446 F.3d 335, 343 (2d Cir. 2006) ("IDEA exhaustion in the instant case is excused under the futility exception for challenges addressing systemic issues"). However, other than acknowledging the existence of such case law on other Circuits, the First Circuit has stopped short from either adopting or rejecting this line of reasoning. *C.f.* Parent/Professional Advoc. League, 934 F.3d 13.

In examining the alleged facts set forth in this civil action — in light most favorable to Plaintiffs — it stems from the record that Plaintiffs' have waded back-and-forth through a spiral of administrative procedures, with the singular aim of securing a FAPE to C.S.S. Nonetheless, the equitable relief that Plaintiffs are seeking from this Court is reasonably available through the mediations, agreements, and final resolutions offered by the Administrative Forum. As the record shows, Plaintiffs have been able to take their grievances to Administrative Judges - and have even achieved two rulings in their favor – hence Plaintiffs' injuries are, indeed, redressable through the administrative process. (Docket No. 21).

Therefore, even assuming that a 'futility' exception has been recognized by the First Circuit for system-wide administrative deficiencies, Plaintiffs would still fail to show that they would be entitled to the benefit of such an exception. Roe, 78 F.4th at

Civil No. 24-1405 (GMM)
Page – 32 –

25. (As to 'futility' exception due to systemic deficiencies in the education agency's administrative procedures, "the exception applies where the challenged violation 'ha[s] the practical effect of denying the plaintiffs a forum for their grievances.'" (*quoting* Hoeft, 967 F.2d at 1304 (alteration in original)). As for this civil action, the continuance of the administrative process — although oftentimes burdensome, tiresome, and frustrating — would not be so futile as to warrant a carve out. *See also* Pihl, 9 F.3d at 190.

The Court is cognizant that "[t]he IDEA does not promise perfect solutions to the vexing problems posed by the existence of learning disabilities in children adolescents." Lenn, 998 F.2d at 1086 (1st Cir. 1993). In the search for a silver lining, the Court further acknowledges that "special benefits adhere to the exhaustion requirements in the IDEA context" because such administrative procedures "plac[e] those with specialized knowledge — education professionals — at the center of the decisionmaking [sic] process." Frazier, 276 F.3d at 60.

In applying the applicable jurisprudence as to the doctrine of 'futility,' and taking into consideration that: (a) the gravamen of Plaintiffs' claims are based on the denial of a FAPE and thus subject to the IDEA's requirement of administrative exhaustion; (b) that Plaintiff's injuries are redressable through the administrative process; and (c) even assuming that a system-wide

Civil No. 24-1405 (GMM)
Page – 33 –

'futility' exception is readily available, Plaintiffs would *still*
fail to show that they would be entitled to benefit from this
exception, the Court has no other alternative than to rule that
Plaintiffs' claims must necessarily be exhausted administratively
prior to invoking this Court's subject-matter jurisdiction.

"Permitting parents to bypass the administrative process in
order to have courts determine in the first instance whether an
IEP provides a FAPE frustrates the IDEA's 'carefully calibrated
balance and shifts the burden of factfinding from the education
specialists to the judiciary.'" Valentín-Marrero, 29 F.4th at 50
(*quoting* Frazier, 276 F.3d at 61). Moreover, "it is . . . our job
to apply faithfully the law Congress has written," and "[w]e cannot
replace the actual text with speculation as to Congress' intent.'"
Henson v. Santander Consumer USA Inc., 582 U.S. 79, 89 (2017)
(*quoting* Magwood v. Patterson, 561 U.S. 320, 334 (2010)).
Consequently, in relation to Plaintiffs' claims of prospective
equitable relief — namely, declaratory judgment and injunctive
relief – the Court sees no alternative than to dismiss due to lack
of subject-matter jurisdiction, pursuant to Rule 12(b)(1), for
Plaintiffs' failure to exhaust administrative remedies.

D.    Monetary damages

Although the IDEA does not provide for monetary damages, it
specifically indicates that "[n]othing [in the IDEA] shall be
construed to restrict" the ability of parties to seek "remedies"

Civil No. 24-1405 (GMM)
Page – 34 –

under "other Federal laws protecting the rights of children with disabilities." 20 U.S.C. § 1415(l).

The IDEA provides forward-looking equitable relief for FAPE-based claims, yet it does not provide backward-looking monetary relief for non-FAPE claims, such as emotional distress. Accordingly, the Supreme Court has held that the "IDEA's exhaustion requirement does not preclude . . . [an] ADA lawsuit because the relief [sought] (*i.e.*, compensatory damages) is not something IDEA can provide." Perez v. Sturgis Pub. Sch., 598 U.S. 142, 142 (2023)

Where the remedies sought by a plaintiff are not available under the IDEA, administrative remedies need not be exhausted. Id. at 149-50. For that reason, "if a plaintiff brings a claim for backwards-looking monetary damages, it is immaterial whether the underlying harm involved the denial of FAPE." Lignos-Lopez v. Servicios de Terapia Educativa Girasol, Inc., 2025 WL 295304, at *3 (D.P.R. Jan. 24, 2025). The administrative exhaustion requirement is, therefore, not applicable to claims for compensatory damages. Perez, 598 U.S. at 147.

In the instant action, the Plaintiffs have stated a claim for backward-looking compensatory damages in their *Complaint*. (Docket No. 1 at 28-29 ¶¶ G-H). Unlike a claim for compensatory education, which is a form of prospective equitable relief that is available under the IDEA and consists of "future special education and related services to ensure or remedy a past denial of a FAPE[,]"

Civil No. 24-1405 (GMM)
Page – 35 –

<u>Doucette</u>, 936 F.3d at 32. Plaintiffs are claiming monetary compensation for alleged past emotional harms. *See* <u>Roe</u>, 78 F.4th at 16 ("Reimbursement of education expenses is limited to money spent by parents for education-related expenditures that the state ought to have borne. Such reimbursements are distinct from damages.") (citations and quotation marks omitted). Under <u>Perez</u>, those claims need not be administratively exhausted. <u>Perez</u>, 598 U.S. at 147. The Court, thus, may properly exercise subject-matter jurisdiction over Plaintiffs' claims for compensatory and nominal damages.

This remains true even where, as here, a complaint commingles equitable and legal claims for relief. <u>Lignos-Lopez</u>, 2025 WL 295304, at *4. Where a complaint: (1) sets forth allegations regarding the denial of a FAPE; (2) requests both equitable relief and monetary damages; and (3) all these claims were not administratively exhausted, the monetary damages claims may survive a motion to dismiss, even as the equitable relief claims are subject to dismissal. <u>Id.</u>

This said, the Court notes that — as part of the agreement reached between the parties to settle Plaintiffs' second administrative complaint - Defendants awarded Plaintiffs with compensatory damages in relation to the allegedly deficient

Civil No. 24-1405 (GMM)
Page – 36 –

education provided to C.S.S.[8] (Docket 21-2 at 3). Yet, in their *Complaint* Plaintiffs request compensatory damages as to the emotional harms they have suffered. (Docket No. 1 at 28 ¶ G). The fact that this Court will not dismiss Plaintiff's claim for compensatory damages on the basis of emotional harms does not exempt Plaintiffs from proving their entitlement to the monetary award they seek.

In sum, Plaintiffs may continue to seek compensatory and nominal damages for their backward-looking non-equitable claims under the ADA and Rehabilitation Act. *See* <u>Perez</u>, 598 U.S. at 147-48; *see also* <u>Nieves-Márquez v. Puerto Rico</u>, 353 F.3d 108, 126 (1st Cir. 2023) (stating that private individuals can indeed recover monetary damages, except punitive damages, if they made the adequate showing). The Court, however, does not retain subject-matter jurisdiction over Plaintiffs' forward-looking equitable claims for relief, given that the administrative procedures have not been exhausted, in accordance with the IDEA. *See* <u>Valentín-Marrero</u>, 29 F.4th at 53 n.4. The latter claims are hereby dismissed, pursuant to Rule 12(b)(1).

Finally, it would be remiss of this Court not to address the underlying and all-too-familiar bureaucratic dysfunction that

---

[8] In *Plaintiffs' Response to Order to Show Cause*, Plaintiffs indicate that although compensatory damages were awarded, Defendants have not yet disbursed this award to Plaintiffs. (Docket No. 34 at 3).

Civil No. 24-1405 (GMM)
Page – 37 –

continues to plague the DOE. The evidentiary record before the
Court illustrates not merely a defective administrative process,
but an entrenched pattern of delays and noncompliance. Though this
matter is procedurally dismissed in part, because the law mandates
this result, it nevertheless offers a troubling window into a
deeply flawed educational system. It bears repeating that
Plaintiffs have already prevailed in the administrative forum;
they secured the relief to which they were entitled and, in doing
so, demonstrated the legitimacy of their claims. And yet, their
appearance before this Court — a forum designed to be one of last
resort — was prompted by Defendants' persistent failure to
implement the very remedies they had already agreed to provide.

When the DOE enters into an IEP to resolve the educational
rights of a child with disabilities, it makes a binding legal
commitment. The casual contempt with which the DOE appears to treat
these legal commitments is inexcusable at best and reprehensible
at worst. The DOE's apparent failure to execute agreed-upon
services for students with disabilities constitutes an abdication
of its ministerial and constitutional duties under both Puerto
Rico and federal law. It is precisely this kind of administrative
inertia that forces parents and guardians to engage in protracted
legal battles simply to compel the DOE to comply with its own
promises.

Civil No. 24-1405 (GMM)
Page — 38 —

This Court therefore warns the DOE that it will not remain indifferent to administrative actions that turn their back on a child in special education. It states unequivocally and for the record: every public officer who enables this persistent pattern of indifference and noncompliance engages in conduct that is not only indefensible, but shameful.

This is not the first time that Defendants have stood before this Court for failing to comply with their own administrative determinations. What remains evident is that no amount of favorable rulings or negotiated agreements can deliver meaningful results if the DOE ignores them once the ink is dry. The Court notes with considerable dismay that the DOE's inefficiency not only undermines judicial economy but endangers the educational development of vulnerable — and too often scarcely resourced — students with disabilities. Each delay, and each unmet obligation, is not a harmless lapse; it is a measurable harm inflicted upon a child.

## IV. CONCLUSION

The Court **GRANTS IN PART** the *Motion to Dismiss*, in accordance with Rule 12(b)(1) for lack of subject-matter jurisdiction, as to the declaratory judgment stating that Defendants C.S.S.' rights were violated, under the IDEA, the ADA, and the Rehabilitation Act; and the injunctive relief ordering the DOE to provide adequate education services to C.S.S. in accordance with her needs,

Civil No. 24-1405 (GMM)
Page – 39 –

directing the Programming and Placement Committee to create a new IEP for C.S.S. for the 2024-2025 academic year, and requiring Defendants to undertake remedial measures to mitigate the effects of past and ongoing violations of C.S.S.' rights. The Court **DENIES IN PART** the *Motion to Dismiss*, compensatory damages for emotional harm, nominal damages for violations to C.S.S.' rights.


IT IS SO ORDERED.

In San Juan, Puerto Rico, September 30, 2025.

<u>s/Gina R. Méndez-Miró</u>
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE